UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ELIABNEL ANTONETTI,


                              Plaintiff,

                                                    DECISION AND ORDER

                                                    04-CV-6575L


               v.

JOANNE B. BARNHART,


                              Defendant.
_____


## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to review the final

determination of the Commissioner of Social Security ("the Commissioner") that Eliabnel Antonetti

("plaintiff") is not disabled and, therefore, is not entitled to Supplemental Security Income benefits

("SSI") under Title XVI of the Social Security Act ("the Act").

The Commissioner seeks reversal of her own final decision and moves to remand the case

for a new hearing and reevaluation of the evidence, pursuant to the fourth sentence of 42 U.S.C.

§ 405(g). (Dkt. #6).  Plaintiff agrees that reversal is required, but argues that there is substantial

evidence in the record that he is disabled. Plaintiff, therefore, moves for judgment on the pleadings

and a remand but solely for the calculation and payment of benefits. (Dkt. #8).

For the reasons discussed below, the Commissioner's motion is granted, plaintiff's motion is denied, and the case is remanded for further administrative proceedings consistent with this Decision and Order, pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

Plaintiff applied for SSI benefits alleging disability due to mental retardation with an onset date of November 26, 2002. (T. 37-39, 42).[1]  His application was denied in January 2003. (T. 21-25). He appealed and a hearing was held before Administrative Law Judge ("ALJ") J. Robert Brown on April 19, 2004, at which plaintiff appeared with his representative and testified. (T. 115-42). Plaintiff's father and a vocational expert also testified.  On June 14, 2004, the ALJ issued a decision finding that plaintiff was not disabled based on application of Rule 204.00 of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. (T. 9-19). The Appeals Council denied plaintiff's request for review on September 22, 2004. (T. 4-6, 7).  This action followed.

## DISCUSSION

The Commissioner concedes that the ALJ committed legal error in evaluating whether plaintiff was disabled.  The ALJ failed to address all of the IQ tests in the record when he determined at step three that plaintiff did not meet the requirements for mental retardation under Section 12.05 of the Commissioner's Listing of Impairments.  The ALJ also did not properly evaluate plaintiff's speech impairment by failing to consider both his stuttering and the intelligibility of his speech. In

---

[1] "T. __" refers to the page of the administrative transcript filed by the Commissioner.

addition, the Commissioner claims that remand is necessary because the record is "incomplete." Specifically, the transcript of the hearing testimony contains approximately 184 "(INAUDIBLE)" references, most of which occurred during plaintiff's testimony in responses to questions.  Further, a portion of text at the bottom of one page of Exhibit 8E, is cut-off. (T. 86).

I agree with the Commissioner that a remand for further proceedings is warranted. "'Where there are gaps in the administrative record or the ALJ has applied an improper legal standard,'" courts remand cases to the Commissioner for further development of the evidence.  *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir.1996)(quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980)). This is not a case "[w]here the existing record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no further purpose . . . ." *Martinez v. Comm'r*, 262 F.Supp.2d 40, 49 (W.D.N.Y.2003); *see also Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir.2000).  In this case, remand is required so that the Commissioner can develop the record regarding plaintiff's speech impairment and then consider all of the pertinent evidence regarding plaintiff's mental retardation. *See Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir.1999).

A.      **Mental Retardation Under Listing 12.05**

Plaintiff contends that remand solely for benefits is warranted because the record clearly shows that he meets the definition of "mental retardation" under both Sections 12.05B and 12.05C of the Listing of Impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1.  I disagree.

In order to be found disabled based on mental retardation under Section 12.05 of the Listing of Impairments, plaintiff must prove: (1) that he satisfies the definition provided for in the introductory paragraph of Section 12.05; and (2) that he satisfies the criteria listed in subsection A,

B, C, or D.  *See* 20 C.F.R. Pt. 404, Subpart P, Appendix 1, 12.00 Mental Disorders, at 12.00A ("If

your impairment satisfies the diagnostic description in the introductory paragraph and any one of the

four sets of criteria, we will find that your impairment meets the listing.").

The record is clear that plaintiff meets the definition of mental retardation contained in the

introductory paragraph, which essentially requires evidence of onset prior to the age of 22.[2]  The

medical evidence includes plaintiff's school records from 1992 to 1995, when he was approximately

15 to 18 years old. (T. 76-78; 79-80; 85-88). These records include reports from two certified school

psychologists and a certified social worker, all of whom reported that plaintiff was mildly or

moderately retarded.[3]  Clearly, then, there is substantial evidence of onset before the age of 22.

What is not clear, though, is whether plaintiff meets the criteria set forth in either 12.05B or

12.05C.  To meet the criteria found in 12.05B, plaintiff must prove that he has a "valid verbal,

performance, or full scale IQ of 59 or less."  To meet the criteria of 12.05C, plaintiff must prove that

he has a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental

impairment imposing an additional and significant work-related limitation of function."

Regarding plaintiff's IQ, there are several reports in the record that date back to 1992 from

both examining and non-examining sources which contain the results of various IQ tests.  According

---

[2]  The introductory paragraph to Section 12.05 provides that, "[m]ental retardation refers
to significantly subaverage general intellectual functioning with deficits in adaptive functioning
initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports
onset of the impairment before age 22."

[3]  The records indicate that, after IQ testing, plaintiff was classified as "Trainable
Mentally Retarded" or "Educable Mentally Retarded," both of which are outdated terms for what
are now known generally as "moderately" mentally retarded (IQ level of 35-40 to 50-55) or
"mildly" mentally retarded (IQ level of 50-55 to approximately 70), respectively. *See* Diagnostic
and Statistical Manual of Mental Disorders (Fourth Edition - Text Revision), at 42-43.

to these reports, plaintiff's IQ when tested has been scored as low as 41 and as high as 67, depending on which test was administered and when. (T.76-78; 79-80; 99-101). The ALJ, however, failed to discuss how much weight he accorded to these opinions regarding plaintiff's IQ when evaluating whether he met the listing requirement for 12.05.   In addition, he did not specify whether he evaluated plaintiff's mental retardation pursuant to 12.05B or 12.05C.

I find that these are matters that should be addressed in the first instance at the administrative level, and not by this Court. The Second Circuit has held that a remand for further proceedings is particularly appropriate where additional findings or explanation will elucidate the rationale for the ALJ's decision. *See Pratts*, 94 F.3d at 39.  Here, the ALJ gave no explanation whatsoever as to why the criteria for 12.05B or 12.05C were not met.   Therefore, a remand is required.

On remand, the ALJ should discuss the different reports, the IQ tests administered, and explain what weight he gives to them.   In doing so, he should bear in mind the directives found in the narrative section of "12.00 Mental Disorders," specifically subsections 12.00D6c and 12.00D6d, which address the different types of IQ tests and which specific scores should be used when evaluating disability under Section 12.05.[4]

---

[4]  For instance, 12.00D6c provides that, "In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." Here, that would mean that in 1992 plaintiff's IQ score was 51, the lowest of the three scores plaintiff received when administered the Wechsler series of tests. (T. 76). 12.00D6d provides that "it is preferable to use IQ measures that are wide in scope and include items that test both verbal and performance abilities" like the Wechsler series, but in certain circumstances, non-verbal tests, such as the TONI-3, may be used.  The record here contains IQ test results from the Wechsler and TONI-3 tests.  On remand, the ALJ should consider how much weight to give these tests, in light of these directives and the Commissioner's other applicable regulations.

In addition, the ALJ should address whether plaintiff meets the criteria for mental retardation under both 12.05B and 12.05C.  Although there is evidence in the record to support plaintiff's contention that he had a valid IQ score of less than 59, which suggests that he meets the 12.05B criteria, other IQ test scores in the record indicate that plaintiff has an IQ between 60 and 70, which would require analysis of the 12.05C criteria.

### B.     Additional and Significant Work-related Limitation of Function Under 12.05C

Moreover, when evaluating whether his impairment meets the criteria in 12.05C , the ALJ needs to develop the record further regarding plaintiff's speech impairment.  As noted above, to meet the criteria of 12.05C, plaintiff must prove that, in addition to having an IQ between 60 and 70, he has "a physical or other mental impairment imposing an additional and significant work-related limitation of function."

Plaintiff claims that his speech impairment is sufficient to meet the second prong of 12.05C, and that may be true. At least one Court has held that a severe speech impairment can satisfy the requirements of the second prong of 12.05C.  *See Jones v. Barnhart*, 335 F.3d 697 (8th Cir.2003). In *Jones*, the Eighth Circuit held that substantial evidence supported a finding that plaintiff met the 12.05C criteria based on an IQ between 60 and 70 as well as a speech impairment that imposed additional work-related limitations apart from those that resulted from the low IQ.  The Court held that plaintiff's speech "problem is not merely one of cognition (I.Q.), but also of expression (for example, an inability to put words in the proper order). Communications difficulty is a real impairment that limits claimant's employment opportunities to the rare job which requires no regular, responsive communication."  *Jones*, 335 F.3d at 701. Importantly, there was sufficient

evidence in the record in *Jones* that the speech impairment existed separate and apart from plaintiff's mental retardation, and was not simply a "peripheral effect of her low intelligence."

This determination, however, cannot be made on the record before the Court. Plaintiff was evaluated by Rochester Hearing and Speech Center on March 3, 2003 and was found to have "a mild fluency disorder, and significantly reduced speech intelligibility." (T. 89). The evaluator noted that a "[r]apid speaking rate, low speaking volume and a mild stuttering disorder compromised [plaintiff's] ability to easily and effectively participate in verbal interaction." (T. 90). Speech therapy was recommended to increase plaintiff's speech intelligibility and fluency. (T. 91). The evaluator, however, does not indicate whether plaintiff's speech problem is related to his IQ or exists independently as a separate impairment. On remand, the ALJ should develop the record further regarding plaintiff's speech impairment, and make the necessary findings regarding whether it imposes other significant work-related limitations of function.[5] *See Perez v. Chater*, 44 F.3d 41, 47 (2d Cir.1996)("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record . . . . This duty exists even when the claimant is represented by counsel or, as here, by a paralegal.") (citations omitted).

---

[5] There is other evidence in the record to support plaintiff's contention that he has a severe speech impairment. Perhaps the best example of the difficulties plaintiff has with speech intelligibility is found in the transcript of the hearing before the ALJ. On no less than five occasions, the ALJ told plaintiff that he had to speak up or keep his voice up, and that he could not hear his answers. The transcript expediter who transcribed the hearing transcript from the tape recording of the hearing found 184 occasions when the speaker on the tape was inaudible. Not all of the (INAUDIBLE) notations in the transcript are found during plaintiff's responses, but the vast majority are. Remand here is also required so that a new hearing can be held and more accurately transcribed. The Commissioner may want to consider alterative transcription options other than tape recording, so as to avoid the complications that occurred here.

When there is a question whether the Commissioner correctly applied the criteria set forth in the second prong of Section 12.05C, courts in this circuit generally remand the case for further evaluation of the evidence. *See Keitt v. Barnhart*, No. 04-CV-1347, 2005 WL 1258918, *3-*4 (E.D.N.Y. May 27, 2005) (finding that remand was necessary "for the Commissioner to apply the correct legal standard and make a specific finding regarding whether, applying the severity test, [plaintiff's] additional limitations satisfy the second requirement of listing 12.05(C)."); *Aviles v. Barnhart*, No. 02 CV 4252, 2004 WL 1146055, *7 (E.D.N.Y. May 11, 2004) (remanding for determination of "whether any of plaintiff's limitations, except for his low IQ, satisfy the second element of Listing 12.05(C)"); *Baneky v. Apfel*, 997 F.Supp. 543, 547 (S.D.N.Y.1998) (remanding case to the Commissioner to make a specific finding regarding whether plaintiff's other limitations satisfied the second prong of Section 12.05C).  The same result should occur here.

There appears to be some dispute regarding the proper test to apply when determining whether a claimant's "physical or other mental impairment" (other than his or her low IQ) imposes a "significant work-related limitation" under 12.05C.  The Second Circuit has not yet ruled on this issue.  I find that the ALJ should use the "severity test" employed by the First, Eighth, and Tenth Circuits, as well as several district courts in this Circuit. *See Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.1997); *Warren v. Shalala*, 29 F.3d 1287, 1291 (8th Cir.1994); *Nieves v. Sec. Health and Human Servs.*, 775 F.2d 12, 14 (1st Cir.1985); *see also Keitt*, 2005 WL 1258918, at *5; *Aviles*, 2004 WL 1146055, at *7; *Baneky*, 997 F.Supp. at 546.

The so-called "severity test" requires that the ALJ find that plaintiff suffer from another impairment that, when viewed without regard to his low IQ, would be considered "severe" as that

term is defined at step two of the Commissioner's five-step sequential disability evaluation.  The

Second Circuit has held that the step-two severity test is not a difficult standard to meet, and is

intended merely to weed out *de minimis* claims. *See Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d

Cir.1995).  Nevertheless, I find that this is the appropriate standard that should be employed when

determining whether plaintiff has another impairment that imposes "significant work-related

limitations of function."  I agree with the reasoning of United States District Court Judge Lewis A.

Kaplan that,

> a contrary interpretation would be inconsistent with the existence of Section 12.05(c)
> in the first place. Section 12.05(c) essentially provides that those individuals with
> IQ's in the range of 60 through 70 may be found disabled upon a showing that they
> have an additional limitation that imposes a significant limitation on their ability to
> work. If "significant" requires something more than "severity," however, then there
> would be little point in having a special category for those with limited IQ's. If the
> "additional" limitation must satisfy more than the second step of the five-step
> analysis, then a qualifying "additional" limitation often would be sufficient in its own
> right to support a finding of disability, rendering Section 12.05(c)'s provisions for
> those with low IQ's superfluous.

*Baneky*, 997 F.Supp. at 546; *see also Keitt*, 2005 WL 1258918, at *5.  Such a reading also comports

with the Commissioner's directives set out in the narrative section of "12.00 Mental Disorders,"

specifically at 12.00A, that, "For paragraph C, we will assess the degree of functional limitation the

additional impairment(s) imposes to determine if it significantly limits your physical or mental

ability to do basic work activities, *i.e.*, is a "severe" impairment(s), as defined in §§ 404.1520(c) and

416.920(c)."

In his administrative decision, the ALJ found that plaintiff had "a speech disorder and mild

mental retardation" that were "severe" within the meaning of the regulations. (T. 14).  Implicitly,

then, the ALJ agrees that plaintiff's speech impairment would satisfy the second prong of 12.05C.

Given that all the IQ tests in the record place plaintiff's IQ no higher than 67, it stands to reason that he would meet the criteria for 12.05C.[6]  Nevertheless, the ALJ found that plaintiff did not meet the listing requirement.  Thus, remand is required so that the ALJ can reconsider these matters.  *See Pratts*, 94 F.3d at 39 ("Remand is particularly appropriate where, as here, we are 'unable to fathom the ALJ's rationale in relation to the evidence in the record' without 'further findings or clearer explanation for the decision.'")(quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982)).

Finally, even assuming that the ALJ determines that plaintiff's mental retardation does not meet the criteria under Section 12.05, the ALJ still must consider the non-exertional limitations created by plaintiff's mental impairment and their effect on his occupational base.  In his administrative decision, the ALJ applied the Medical-Vocational Guidelines (the "Guidelines") to direct a finding of "not disabled."  This implies that the ALJ found that plaintiff did not suffer from any significant non-exertional impairments that would preclude reliance on the Guidelines. In fact, vocational expert Julie Andrews testified that if plaintiff's mental impairments created difficulties with plaintiff maintaining concentration or making decisions, it would have a "negative impact" on plaintiff's ability to keep a job. (T.140-41).

Nevertheless, there is evidence in the record that plaintiff has moderate and marked limitations in fourteen out of twenty areas of functioning (T. 106-107) that could preclude reliance on the Guidelines to direct a finding of not disabled.  On remand, assuming that the ALJ does not find that plaintiff meets the Listing of Impairments for mental retardation, he should seriously

---

[6]   This assumes, of course, that the speech impairment exists independently from plaintiff's low IQ. The ALJ, however, did not make a finding about whether they are independent impairments, and he should do so on remand.

consider whether the evidence of record regarding these non-exertional limitations precludes application of the Guidelines as a basis for decision-making.  *See Butts v. Barnhart,* 388 F.3d 383-84 (2d Cir. 2004); *Rosa,* 168 F.3d at 78.  If he finds that the non-exertional limitations do not preclude reliance on the Guidelines, then the ALJ should set forth in his decision the reasons why that is the case.


# CONCLUSION

The Commissioner's motion (Dkt. #6) is granted, plaintiff's motion (Dkt. #8) is denied, and the case is remanded for further administrative proceedings consistent with this Decision and Order, pursuant to the fourth sentence of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge


Dated: Rochester, New York
      November 18, 2005.

- 11 -